Wood, J.
The above cases present questions common to each, except that of venue which is presented in cases Nos. 10007 and 10029 only, the contention of the plaintiff in error being that in neither of these two cases was the venue of the crime proven.
It was incumbent upon the state to establish in proof that the sales of liquor complained of took place in Athens county, Ohio,, as alleged in the affidavits. The bills of exceptions,-purporting to contain all the evidence, show there ivas- no proof offered that the sales occurred either in the city of Nelsonville, Ohio, or in the county of Athens, Ohio; neither is there anything in the record from which the court can take judicial knowledge as to where the alleged sales took place. For aught that appears the sales took place in other than local option territory and were legal. This omission on the part of the state to establish the venue is reversible error, and if for no other reason the defendant in these two cases should be discharged. *175 The failure to prove the venue was manifestly an oversight on the part of the state.
The vital question presented in each of the above eases, and which I shall attempt to decide, is this: Was the sale of the beverage sold or kept for sn’e prohibited by the statute known as the Rose local option law?
Section 3 of this act reads:
“The phrase 'intoxicating liquor’ as used in this act shall Imj construed to mean any distilled, malt, vinous or any intoxicating liquor whatever.”
Assuming that the .evidence offered by the state in its attempt to establish the character of the beverage sold, or kept for sale, was competent, no higher claim can be made than it is established in proof that this beverage is what is now generally known as “near beer,” and was probab’y the product of malt brew, but in fact was not intoxicating. Two expert chemists were called as witnesses, each of whom had analyzed a number of samples of the beverage in question. Out of six samples, one chemist found they contained from .71 per cent, to .94 per cent, alcohol; the other found the same samples to contain from .38 per cent, to .51 per cent, alcohol.
The defense offered proof by expert witnesses, which was not contradicted by the state, that a beverage of this- character could not be intoxicating. If a conviction is upheld under the evidence- offered in either case it must be upon the theory that the beverage is a malt liquor and its sale, or the keeping of a place where it is sold, Is a violation of the Rose law, whether the, beverage is intoxicating in fact or-not. Beyond question the Legislature-has the power to legislate against the evils resulting from the manufacture and,sale of intoxicating liquors. Aside fr-om the express power given by the Constitution the liquor traffic is clearly one for police regulation, and if in making such regulation effective it becomes incidentally necessary to restrict- or prohibit the sale of any malt liquor, or other beverage, whether intoxicating or not, such legislation, if reasonable, must be held valid. If in such legislation certain liquors or beverages were classed or designated as intoxicating liquors,, though not intoxicating in-fact, still they would-be intoxicating in-, law, and in such case no proof of their intoxicating properties would be required for a conviction.
*176 The question ifiVolved is therefore narrowed down to the legislative intent as found in Section 3 of the county local option law. It reads': “The phrase ‘intoxicating liquor’ as used in this act shall be-construed to mean any distilled, malt, vinous or any intoxicating liquor whatever.”
By this definition is it meant any distilled liquor, any malt liquor, any vinous liquor, or any intoxicating liquor whatever, or does it mean any distilled intoxicating liquor, any malt intoxicating liquor, any vinous intoxicating liquor or any intoxicating liquor whatever! The words “distilled,” “malt,” and “vinous” are not substantive but qualifying words. They have no meaning standing alone and must either qualify the word “liquor,” or the phrase “intoxicating_liquor.” In construing the legislative meaning the phrase “or any intoxicating liquor whatever” should be given weight. It is a general term following words that are specific.
In Shultz v. Cambridge, 38 O. S. 659, our Supreme Court says:
“General words, following particular and specific words, must, as a general rule, be confined to things of the same kind as those specified.”
Here the general phrase refers to intoxicating liquors only. If by this definition of intoxicating liquor any malt beverage with all alcohol extracted is included, then by like construction of the word “vinous” the sale of the unfermented juice of the grape is also prohibited, while distilled liquor would include the purest water we drink, and its sale would be prohibited by the act. This to my mind would render the statute unreasonable as well as invalid, while to hold that the words “distilled,” “malt” and “vinous” refer to intoxicating liquors only harmonizes the section with the tendency of all prior temperance legislation in the state.
In Wateron v. Blood (C. P.), 21 Pa. Co. Ct, 601, the court aptly says:
“A statute should, if possible, be interpreted in harmony with the general principles of law and the tendency of the legislation as expressed by other statutes bn the same subject, ’ ’
*177 I- think no prior criminal statute can he found in Ohio - making a drink intoxicating in law that is not intoxicating in fact. Looking to the title of the act, which is intended to reflect the legislative intent, it reads:'
“An act further to provide against the evils resulting from the traffic in intoxicating liquors by providing for local option in counties:” ■ '
The inference is clear that the option to be granted to counties is the ''sale or not of intoxicating liquors only. This- same act by Section 2, in providing the method by which an elector shall designate his choice, requires his ballot to have printed thereon the affirmative and negative statement ‘ ‘ the -sale of intoxicating liquors as a beverage'shall be prohibited.” Again, in Section 3, after defining intoxicating liquor to mean, any distilled, malt, vinous or any intoxicating liquor whatever, it is provided “but nothing in this act shall be construed to prevent the selling of intoxicating liquors at retail by a regular druggist for exclusively known' medicinal,' pharmaceutical,, scientific, mechanical or sacramental purposes; and when sold for medicinal purposes it shall be sold only in good faith upon a written prescription, signed and dated in good faith by- a reputable physician in active practice ahd the prescription • used but once. ’ ’ If the meaning contended for by the state is the correct' one, then it would be a violation of the act for any person, other than a druggist, to sell any liquor which was the result of distillation, or was the unfermentecl -juice - of the grapes or a malt product with every vestige of alcohol extracted, and such sales' could only be made by druggists upon prescription. To my mind this would be a strained construction and would violate the spirit of the act. .
1 have had under consideration a case decided by. our Supreme Court in State of Ohio, ex rel Guilbert, Auditor of State, v. Kauffman, Auditor, etc., 68 O. S., 635, in which it is held that Bishop’s beer, being a malt beverage, is subject to the Dow tax whether intoxicating or not; but in that case the court was considering a taxing statute, and not a criminal law. The Legislature has the same power, to place a tax upon the .business of selling a non-intoxicating beverage as- upon alcoholic intoxicating drinks, and the court so held: I regret that the Same court has *178 not yet passed upon the question under consideration, but I can not conclude that its holding will be that the sale of a harmless, non-intoxicating beverage, or the keeping of a place where such beverages are sold, is a crime under the county local option law.
In neither of the cases under consideration is there any proof that the beverages sold, or kept for sale, were of an intoxicating character, and for this reason the judgment of the lower court must be reversed, and the defendants in each case discharged.

 A contrary holding by the Common Pleas. Court of Fulton County was reversed by the Circuit Court of the Sixth Circuit without report; but the Circuit' Court of the Fourth Circuit, in a Portsmouth case, has held, also without report, that the sale of a malt liquor in dry territory is prohibited under the Rose law without regard to the percentage of alcohol it may contain.